UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HERSON G.L.,[1]

Petitioner,

v.

TONYA ANDREWS et al.,

Respondents.

No. 1:26-cv-04700-TLN-AC

A# 218-099-745

**ORDER**

This matter is before the Court on Petitioner Herson G.L.'s ("Petitioner") Petition for Writ of Habeas Corpus (ECF No. 1) and Motion for Temporary Restraining Order ("TRO") (ECF No. 9). Respondents filed a response. (ECF No. 8.) For the reasons set forth below, the Petition for Writ of Habeas Corpus is GRANTED in part (ECF No. 1) and Respondents are ORDERED to provide Petitioner a bond hearing. The Motion for TRO is DENIED as moot. (ECF No. 9.)

///

///

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initials, to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

This case arises from Petitioner's allegedly unlawful detention by federal immigration authorities. (ECF No. 1.) Petitioner is a noncitizen who entered the United States four years ago[3] without inspection. (ECF No. 1 at 5; ECF No. 8 at 1.) On October 30, 2020, he filed an application for asylum, which remains pending. (ECF No. 8-1 at 2.) On May 15, 2026, he was convicted of trespassing, petit theft, three counts of resisting an officer without violence, and introducing contraband into a detention facility. (ECF No. 8 at 2; ECF No. 8-2 at 7–17.) U.S. Immigration and Customs Enforcement ("ICE") arrested him upon his release from criminal custody on or about May 17, 2026.[4] (ECF No. 1 at 5; ECF No. 8 at 2.) Petitioner filed the instant Petition for Writ of Habeas Corpus on June 18, 2026, challenging the lawfulness of his detention. (ECF No. 1.)

## II. STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

---

[2] These facts are either set forth in Respondents' briefing or are not disputed.

[3] The precise date is unknown. (ECF No. 8 at 1.)

[4] Respondents' records list a "date of action" of May 17, 2026, in contrast to the habeas petition which states that Petitioner has been detained since May 24, 2026. (ECF No. 1 at 5; ECF No. 8-1 at 1.) The precise date of Petitioner's arrest is immaterial to the due process analysis conducted herein.

## III. Analysis

Petitioner argues his detention violates the Fifth Amendment Due Process Clause. (ECF No. 1 at 16–17.) In opposition, Respondents argue Petitioner's detention is lawful because he is subject to mandatory detention under 8 U.S.C. § 1226(c) ("§ 1226(c)"). (ECF No. 8 at 1–2.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (2001). These due process rights extend to immigration proceedings, including detention and deportation proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### A. Liberty Interest

Respondents argue Petitioner is subject to mandatory detention under § 1226(c) because of his criminal convictions. (ECF No. 8 at 2.) However, Petitioner's liberty interest is not defeated by statute. Section 1226(c) mandates detention of noncitizens who have been arrested, charged, convicted, or sentenced for certain criminal offenses. 8 U.S.C. § 1226(c). Although the United States Supreme Court upheld the facial constitutionality of mandatory detention under § 1226(c), it did not foreclose challenges to the statute as applied to individuals. *Demore*, 538 U.S. at 513; *Nielsen v. Preap*, 586 U.S. 392, 396, 420 (2019). Courts in the Ninth Circuit routinely review as-applied constitutional challenges to § 1226(c) detention. *See, e.g.*, *Carballo*, 2025 WL 2381464, at *5 (conducting as-applied due process analysis for noncitizen detained pursuant to §

1226(c)); *Perera v. Jennings* (*Perera I*), No. 21-CV-04136-BLF, 2021 WL 2400981, at *3–6 (N.D. Cal. June 11, 2021) (same); *Pham v. Becerra*, No. 23-CV-01288-CRB, 2023 WL 2744397, at *4–7 (N.D. Cal. Mar. 31, 2023) (same). Indeed, this Court has recently agreed with other courts in the Ninth Circuit that detention without a bond hearing under § 1226(c) can be unconstitutional as applied, even for noncitizens with criminal convictions more serious than Petitioner's. *See Jose G. M. L. v. Warden of the Golden State Annex Detention Facility*, No. 1:26-cv-00047-TLN-EFB, 2026 WL 472987, at *3 (E.D. Cal. Feb. 19, 2026) (finding detention under § 1226(c) without a hearing likely violated due process and collecting cases). Thus, the Court finds Respondents' assertions unavailing.

Accordingly, Petitioner has a liberty interest in his freedom from physical restraint protected by the Due Process Clause. The Court next considers what process was owed to Petitioner.

### B. Procedures Required

As to the second step — what process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, the Court finds these factors favor a bond hearing at minimum. The Court will address each of these factors in turn.

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by Respondents' actions in detaining him. The four years that Petitioner spent at liberty underscores the gravity of its loss. *See Doe v. Becerra*, 787 F. Supp. 3d at 1094 ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty."). Despite his interest in maintaining his liberty, Petitioner has

now been detained for approximately four months without any opportunity to be heard as to the justification for his detention. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been affected by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any hearing, either pre- or post-detention. "Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." *Carballo*, 2025 WL 2381464, at *7 (citing *Zadvydas*, 533 U.S. at 690; *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023)). It is not this Court's role to determine whether Petitioner is a danger or flight risk. However, without an individualized determination by a neutral decisionmaker that Petitioner's detention is justified the risk of erroneous deprivation is high. *See R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025).

Finally, the government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are negligible. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). While Respondents highlight the government's interest "in ensuring appearance and protecting the public" (ECF No. 8 at 3), the Court finds this interest does not entitle the government to detain Petitioner without any process whatsoever. No neutral arbiter has found Petitioner poses a danger to the community or a flight risk. "While the Government's interest in enforcing the nation's immigration laws is significant, that interest is not at stake here; instead, it is the much lower interest in detaining [Petitioner] pending removal without a bond hearing." *Perera v. Jennings* (*Perera II*), 598 F. Supp. 3d 736, 746 (N.D. Cal. 2022) (citing *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019)). "Requiring the government to provide [Petitioner] with a bond hearing does not meaningfully undermine the government's interest in detaining non-citizens who pose a danger to the community or are a flight risk." *Perera I*, 2021 WL 2400981, at *5.

Here, there is no final order of removal for Petitioner. As discussed above, no neutral

arbiter has found Petitioner to be a danger to the community or a flight risk. Moreover, the cost and time required for procedural safeguards are minimal. Bond hearings are routine processes for Respondent and carry minimal burden.

On this record, the *Mathews* factors entitle Petitioner to a bond hearing, at a minimum. *See Carballo*, 2025 WL 2381464, at *8. Respondents have not provided such a hearing and are continuing to deny him one. Therefore, Respondents have denied Petitioner the "fundamental requirement of due process . . . the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333.

Accordingly, Petitioner is entitled to relief on his due process claim in the form of a bond hearing.

## IV. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED:

1. Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED in part;[5]

2. Petitioner's Motion for TRO (ECF No. 9) is DENIED as moot;

3. Respondents are ENJOINED and RESTRAINED from continuing to detain Petitioner for more than **seven (7) days** from the date of this Order (unless Petitioner seeks additional time to prepare) without a bond hearing before a neutral fact-finder at which Respondents bear the burden to justify Petitioner's detention by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. The factfinder must consider alternative conditions of release and Petitioner's financial circumstances in setting bond. At any such hearing, Petitioner shall be allowed to have counsel present. If Petitioner is not found to be a danger to society or flight risk, Respondents must immediately release Petitioner. Respondents may impose any restrictions or conditions determined to be necessary by the neutral factfinder at the hearing;

---

[5] Petitioner also seeks an award of attorney's fees and costs under the Equal Access to Justice Act. (ECF No. 1 at 17.) The Court will consider any timely filed request for fees and costs on a properly noticed and supported motion.

4. Within **two (2) court days** from the date of the bond hearing, Respondents must file a **notice of compliance** with this Court's Order and identify Petitioner's custody status and the outcome of any hearing;

5. If Petitioner is released, Respondents are further ENJOINED from re-detaining Petitioner absent material changed circumstances and compliance with constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where Respondents show by clear and convincing evidence (a) a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) the government's interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention. *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present; and

6. The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

DATE: August 18, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE